THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Donald J. Brown,       
Respondent,
 
 
 

v.

 
 
 
Li'l Cricket Food Stores, Inc.,       
Appellant.
 
 
 

Appeal From Spartanburg County
J. Michael Baxley, Circuit Court Judge

Unpublished Opinion No.  2005-UP-211
Submitted March 1, 2005  Filed March 24, 2005

REVERSED

 
 
 
Donald C. Coggins, Jr., David H. Tyner and Harrison, White, Smith, all of Spartanburg, for Appellant.
Albert V. Smith, of Spartanburg, for Respondent.
 
 
 

PER CURIAM:  Lil Cricket Food Stores, Inc. (Store) appeals from the trial courts judgment in favor of Donald J. Brown for $3500 on his claim for false imprisonment.  We reverse.[1] 
FACTS
Brown is a former employee of the Store.  This matter arose after Eddie Morman, the manager, discovered on October 6, 1999 that $500 was missing from a deposit that was left overnight in his desk drawer.  After a search revealed that the money was indeed missing, corporate management told Morman to call the police and have them fill out a report.  
On October 9, 1999, an officer from the Spartanburg County Sheriffs Department filled out an incident report and took a voluntary statement from Morman.  In the statement, Morman indicated he had informed his superiors that only three employees had access to the money:  Brown, Sara Strong, and himself.  Brown and Strong were listed as suspects on the incident report.  
The Store also conducted an in-house investigation.  Corporate management watched videotape from the security cameras and noticed that on several occasions Brown allowed customers to leave the store with beer and cigarettes without paying for them.  This information was turned over to Wayne Butler, head of security for the Store. 
On October 18, 1999, Butler and other corporate management officers interviewed Brown, Morman and Strong separately.  All three denied any knowledge of the moneys whereabouts.  Brown testified Butler told him during that conversation that if [Brown] didnt tell [Butler] that [Brown] took the money, [Brown] was going to jail.  Brown responded that they might as well go ahead and get a warrant on [him] because [Brown] knew [he] didnt take the money.  Another employee, Pamela Rice, asked to speak to the corporate management officers.  Rice told management she had seen Brown take money and put it into his pocket on one occasion.  Additionally, Rice said she had seen Brown allow customers to leave the store without paying for beer and cigarettes.  Rice gave a written statement relating the same information.  
Because the videotape corroborated what Rice said, corporate management questioned Brown about the beer and cigarettes, and he admitted giving them to friends of his.  The Store suspended Brown from employment because of the video evidence of him giving away store merchandise.  
After completing the interviews, Butler turned the results of the Stores investigation, including Rices statement, over to the police.  Corporate management and the investigating officer both testified that no accusations were made against Brown at that time.  Butler testified he never suggested to police that Brown be arrested.  Additionally, Brown admitted he never heard either Morman or Butler make any accusations against him to the police.  
On October 22, 1999, Officer John Hudson presented the results of the police investigation to a magistrate and obtained an arrest warrant for breach of trust under $1,000.  Officer Hudson testified that it was departmental policy for officers to request a warrant once the investigation was concluded to determine whether probable cause existed.  Officer Hudson further testified that Butler had no part in the decision to seek a warrant.  
Brown was subsequently arrested pursuant to the warrant.  He spent approximately eight hours in jail.  A trial date was set, and notice of a hearing was mailed to the Store.  Butler testified that as there is no mail receptacle at the Store, any mail addressed to that location would be returned.  In addition, Butler was out of the office for about a month during this time for medical reasons.  No one from the Store appeared at the hearing.  As a result, the charges against Brown were dismissed.  
Brown then brought an action against the Store for false imprisonment and liable per se, seeking actual and punitive damages.  The Store asserted a counterclaim pursuant to the South Carolina Frivolous Proceedings Sanctions Act, S.C. Code Ann. § 15-36-10 through -50 (2005).  After a bench trial, the trial court found in favor of the Store on the libel per se action but in favor of Brown on the false imprisonment claim and the Stores counterclaim.  The court awarded Brown $3,500 in damages.  This appeal followed. 
STANDARD OF REVIEW
This is an action at law.  See Culler v. Blue Ridge Elec. Co-op., Inc., 309 S.C. 243, 246, 422 S.E.2d 91, 93 (1992) (stating an action in tort is generally an action at law).  In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judges findings.  Townes Assocs., Ltd. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).  
LAW/ANALYSIS
The Store argues that the circuit court erred as a matter of law in finding that its actions constituted false imprisonment.  We agree. 
False imprisonment is deprivation of a persons liberty without justification.  Gist v. Berkeley County Sheriffs Dept, 336 S.C. 611, 615, 521 S.E.2d 163, 165 (Ct. App. 1999) (quoting Caldwell v. K-mart Corp., 306 S.C. 27, 30, 410 S.E.2d 21, 23 (Ct. App. 1991)).  In order to prevail on a claim for false imprisonment, the plaintiff must establish:  (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful.  Id. at 618-19, 521 S.E.2d at 167.  
A private party at whose request, direction, or command a police officer makes an unlawful arrest may be liable for false imprisonment 32 Am. Jur. 2d False Imprisonment § 40 (1995); see, e.g., Wingate v. Postal Tel. & Cable Co., 204 S.C. 520, 30 S.E.2d 307 (1944) (holding a company liable for false arrest based on conduct by one of its employees).  Although it is not necessary that the defendant expressly direct the arrest, there must be some affirmative act on the defendants part which induces the officer to make the arrest.  32 Am. Jur. 2d False Imprisonment § 41 (1995).  The instigation must be such that the arrest is not carried out by the officers own volition, but to carry out the request of the third party.  Id.  Also, no liability is incurred if a person merely gives information to an officer tending to show that a crime has been committed; this is so even if the information purports to show that the person later falsely arrested is the one who committed the alleged crime.  Id.  
The supreme court in Wingate elucidated:

Where a person merely directs the attention of a police officer to what he supposes to be a breach of the peace, or gives to such officer facts indicating such, and the officer, without other direction, arrests the offender on his own responsibility, the person who did nothing more than communicate the facts to the officer is not liable for causing the arrest, even though it is made without a warrant.  Where a person has information or knowledge that the law has been violated, he not only has a right, but frequently it is his duty, to communicate such information or facts to the proper officer so as to give such officer the opportunity, if in his judgment it is proper to do so, to take whatever steps may be necessary to apprehend the offender. . . . Those who honestly seek the enforcement of the law and who are supported by circumstances sufficiently strong to warrant a cautious man in the belief that the party suspected may be guilty of the offense charged, should not be made unduly apprehensive that they will be held answerable in damages.
But it is equally well settled that where a private person induces an officer by request, direction or command to unlawfully arrest another, he is liable for false imprisonment.  The charge of false imprisonment is not confined to the party who unlawfully seizes or restrains another, but it likewise extends to any person who may cause, instigate or procure an unlawful arrest.

Wingate, 204 S.C. at 527-28, 30 S.E.2d at 310-11 (internal citations and quotation marks omitted).  
In Wingate, an employee of the defendant company went to police, complained of the suspects actions, and told the officer that they ought to be arrested.  Wingate, 204 S.C. at 524, 30 S.E.2d at 309.  The court held that a jury question was created as to liability.  Id. at 28, 30 S.E.2d at 311. 
Here, there is no indication in the record that the Store or any of its agents requested, directed, or commanded Browns arrest.  Mormans statement did not specifically accuse Brown.  Morman listed three people with access to the area where the money had been, including himself.  The police report named both Brown and Strong as suspects.  
The in-house investigation was conducted on October 18, 1999, over a week after police took the statement.  After interviewing Strong, Morman and Brown, and taking Rices voluntary statement, corporate management turned the information over to the police because it was part of an ongoing criminal investigation.  The only evidence regarding an accusation was Browns testimony that Butler, the head of security, accused him of taking the money.  However, this accusation was not made in the presence of law enforcement.  The investigating officers testimony at trial corroborated the testimony of the Stores employees, who uniformly testified that the results of their investigation were turned over to law enforcement without comment.  Officer Hudson denied any employee of the Store accused Brown of taking the money.  Finally, Officer Hudson testified that departmental policy required the results of the investigation to be presented to the magistrate for a warrant once it was completed.  He further testified that Butler was in no position to request [a warrant] whatsoever.  
We find no evidence in the record supporting a finding that the Store or any of its agents communicated any accusation against Brown to the police.  Brown failed to show an inducement by request, direction, or command to unlawfully arrest him.  Accordingly, we hold that Browns false imprisonment claim fails as a matter of law.
CONCLUSION
Based on the foregoing, the order of the trial court is hereby 
 REVERSED.  
 GOOLSBY, HUFF, and STILWELL, JJ., concur.  

[1]We decide this case without oral argument pursuant to  Rule 215, SCACR.